**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**LIBERTY CORPORATE CAPITAL LTD.,**

    Plaintiff,

**v.**                                                  **CIVIL ACTION NO.: 3:17-CV-25
(GROH)**

**PEACEMAKER NATIONAL TRAINING
CENTER, LLC, PEACEMAKER
PROPERTIES, LLC, BEN GOLDSTEIN
and DIANE GOLDSTEIN,**

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Currently pending before the Court is the Plaintiff's Motion for Summary Judgment [ECF No. 46], filed on August 31, 2018. On September 21, 2018, Peacemaker National Training Center, LLC and Peacemaker Property, LLC filed a Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Partial Summary Judgment Regarding Plaintiff's Duty to Defend. ECF No. 48. Plaintiff filed a Reply to Defendants' Response on October 5, 2018. ECF No. 49. For the reasons stated herein, the Plaintiff's motion for summary judgment [ECF No. 46] is **GRANTED** on all issues.

**I. Background**

Peacemaker National Training Center, LLC and Peacemaker Properties, LLC[1] have been named as defendants in two lawsuits filed by Ben and Diane Goldstein[2], the other above-named Defendants. The first lawsuit was filed in the Circuit Court of Berkeley County, West Virginia on September 21, 2015. The second lawsuit was filed in the Circuit Court of Frederick County, Virginia on May 4, 2017.[3] The underlying lawsuits both allege a noise nuisance[4] by substantial and unreasonable interference with the use of the Goldsteins' property.[5] Additionally, in both lawsuits the Goldsteins request equitable relief, specifically temporary and permanent injunctive relief regarding the hours of operation and maximum noise levels. The Goldsteins request noise abatement measures be implemented on the shooting range if Peacemaker fails to comply with the injunctions. Furthermore, if these forms of relief are not complied with, the Goldsteins request monetary damages for the cost of implementing reasonable and necessary noise abatement measures on their own property.

Liberty subscribed to various policies that provided Peacemaker with commercial

---

1 In the remainder of this order, Defendants Peacemaker National Training Center, LLC and Peacemaker Properties, LLC will be referred to collectively as "Peacemaker".

2 Upon motion by Liberty, [ECF No. 20], default judgment was entered against Ben and Diane Goldstein on June 7, 2017 by the Clerk of Court. ECF No. 21.

3 This case came before the Court by complaint on March 17, 2017. ECF No. 1. The Virginia lawsuit was filed thereafter while the current matter was pending before the Court.

4 Peacemaker is a large commercial shooting range located in Berkeley County, West Virginia. The essence of the Goldsteins' claim is that Peacemaker made representations to the Planning Commission that it would not exceed 65 decibels or lower during operating hours for the noise level. Additionally, the Goldsteins claim that Peacemaker said it would maintain operating hours from 9:00 or 10:00 a.m. until 5:00 or 6:00 p.m., but has consistently opened earlier and remained open later.

5 The Virginia lawsuit also alleges violations of various ordinances and laws regarding the operations of a shooting range in Virginia.

general liability coverage ("the Policy"), subject to their terms.[6] On March 17, 2017, Liberty filed a complaint for declaratory judgment in this Court specifically seeking a judicial determination that it has no obligation to defend or indemnify Peacemaker in the underlying lawsuits for some or all of the Goldsteins' claims. ECF No. 1. Additionally, Liberty moved for summary judgment as to all initial claims and Peacemaker's Counterclaims. ECF No. 46.

## II. Standard of Review

Summary judgment as to a given subject is appropriate under Federal Rule of Civil Procedure 56 when a dispute presents no genuine issue as to any material fact and the moving party is thus entitled to judgment in its favor as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Therefore, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of disputed material facts, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is

---

6 While there are five separate consecutive policies that exist between the parties, Peacemaker stipulates that the language of each policy remains substantially similar over the course of the consecutive policy terms. ECF No. 48 at 2 n.1.

3

a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-35; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

### III. Applicable Law

In this case, the Policy does not contain a choice of law provision to govern disputes between the parties. However, there is a "service of suit" clause that states, "[i]t is agreed that in the event of our failure to pay any amount claimed to be due hereunder we will, at your request submit to the jurisdiction of any court of competent jurisdiction within the United States." ECF No. 46-3 at 14. Under the "Erie doctrine," federal courts sitting in diversity apply state substantive law and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64, 76 (1938). It is clear that the proper law to apply to the issue before the Court is West Virginia law, the law of the state. See Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 109 (1945) (determining if an issue is procedural or substantive by looking at if it "significantly affect[s] the result of a litigation"). Furthermore, "determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law", and therefore, is well suited for summary judgment. Mitchell v. Federal Kemper Ins. Co., 204 W. Va. 543, 544 (1998) (quoting Pacific Indemnity Co. v. Linn, 766 F.2d 754, 760 (3rd Cir. 1985)).

Two duties arise from the existence of a liability insurance policy, the duty to defend and the duty to indemnify. State ex rel. Nationwide Mut. Ins. Co. v. Wilson, 236 W. Va. 228, 233 (2015). Under West Virginia law, the duty to defend may arise where the duty to indemnify does not. See Id. (finding that the duty to defend is broader than the duty to indemnify). "If part of the claims against an insured fall within the coverage of

4

a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." Horace Mann Ins. Co. v. Leeber, 180 W. Va. 375, 378 (2003).

> An insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If the causes of action alleged in the complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

State Auto. Mutual Ins. Co. v. Alpha Engineering Services, Inc., 208 W. Va. 713, 716 (2000) (*per curiam*) (citations omitted).

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Keffer v. Prudential Ins. Co. of America, 153 W. Va. 813, 815-16 (1970). An insurance policy is ambiguous if it is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Prete v. Merchants Property Ins. Co. of Indiana, 159 W. Va. 508, 511 (1976). West Virginia courts have "consistently followed the general principle that [ambiguous] insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Broy v. Inland Mut. Ins. Co., 160 W. Va. 138, 141 (1977).

## IV. Discussion

The relationship between Liberty and Peacemaker was established by way of an insurance policy that Liberty issued to Peacemaker.[7] Liberty argues that the Policy

---

7 Coverage is limited to one of three possible situations under the Policy: (1) bodily injury and property damage; (2) personal and advertising injury; and (3) medical payments. The latter, medical payments, is

5

does not require it to defend or indemnify Peacemaker under West Virginia law because the actions for which Peacemaker is now being sued are not covered under Coverage A or B of the Policy. Liberty also argues that any potential coverage is barred because Peacemaker did not comply with the notice requirement under the Policy. Furthermore, Liberty contends that if they are not required to defend or indemnify Peacemaker that the Defendants' counterclaims must also fail. For the following reasons, the Court finds that Liberty has no duty to defend or indemnify Peacemaker.

### A. Coverage A of the Policy

Coverage A of the Policy provides that if a claim is made against an insured for damages because of "'bodily injury' or 'property damage' that is caused by an 'occurrence'" then Liberty will pay up to its limit in liability, including providing a defense to the insured. ECF No. 46-3 at 15. The Court must determine what the parties' understanding of "bodily injury" and "property damage" include to determine if there is potential coverage under Coverage A of the Policy. Furthermore, if the Court determines the Goldsteins alleged "bodily injury" or "property damage" as defined under the Policy, then the Court must determine if it was caused by an "occurrence," and if it is the type of damages covered under the Policy.

#### 1. Bodily Injury

"Bodily injury" is defined by the Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' shall also include disability, shock, mental anguish or mental injury, provided that

---

not at issue.

such disability, shock, mental anguish or mental injury is a direct result of bodily injury, sickness, disease or death sustained by a person." ECF No. 46-3 at 30. Peacemaker argues that the Goldsteins alleged bodily injury in the underlying lawsuits because they alleged deprivation of their "physical, mental and emotional well-being." ECF No. 48 at 8. However, the definition in the Policy is clear that "mental anguish or mental injury" is only included in the definition of bodily injury if it is a "direct result of bodily injury, sickness, disease or death." Nothing about the underlying lawsuits contain allegations that can be considered "bodily injury, sickness, disease or death."

Furthermore, West Virginia law supports the conclusion that the underlying lawsuits do not allege "bodily injury."

> In West Virginia, it is well-settled that "purely mental or emotional harm that . . . lacks physical manifestation does not fall within a definition of 'bodily injury,' . . . which is limited to 'bodily injury, sickness, or disease.'" Cherrington, 745 S.E.2d at 522 (quoting Syl. Pt. 1, Smith, 208 W. Va. 664, 542 S.E.2d 827) ("Because there is no indication that Ms. Cherrington's emotional distress has physically manifested itself, we conclude that she has not sustained a 'bodily injury.'"). "'[G]reat embarrassment, consternation, mental pain and anguish, and emotional upset' . . . standing alone, do not constitute 'bodily injury.'" Tackett v. Am. Motorists Ins. Co., 213 W. Va. 524, 584 S.E.2d 158, 166 (2003); see also Smith, 542 S.E.2d at 831 (noting that a complaint was "completely devoid of allegations" that physical symptoms occurred).

Grand China Buffett & Grill, Inc. v. State Auto Prop. & Cas. Co., 260 F. Supp. 3d 616, 622 (N.D.W. Va. 2017). Peacemaker argues that the Goldsteins have alleged potential bodily injury because in their response to an interrogatory they said they have experienced "stress and anxiety at a time in their lives when they had hoped to enjoy a peaceful and pleasant retirement." ECF No. 48 at 9. However, Peacemaker fails to state that the stress and anxiety was a direct result of "bodily injury, sickness, disease or

7

death."  Therefore, coverage for "bodily injury" is not triggered under Coverage A of the Policy.

### 2. Property Damage

"Property damage" is defined by the Policy as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured."  ECF No. 46-3 at 34.  Liberty argues that a nuisance claim is merely a "burden" that exists on property, but not actual damage to property.  See One Gateway Assocs. V. Westfiled Ins. Co., 184 F. Supp. 2d 527, 533 n.4 (S.D.W. Va. 2002) (finding that deprivation of the "quiet use, control and enjoyment of [Retail Designs'] property" is merely a "burden[] . . . on its property but not actual damages to its property").

Peacemaker argues that the Goldsteins' allegations meet the definition of "property damage" under the Policy because "[a] loss of use occurs whenever there is an interruption of normal use o[f] property."  ECF No. 48 at 7.  However, Peacemaker states this blanket definition without any support from case law.  Peacemaker cited a circuit court case analyzing Florida law to support the conclusion that physical discomfort can count as loss of use.  See Mid-Continent Cas. Co. v. Adams Homes of Nw Fla., Inc., 725 Fed.Appx. 777, 781 (11th Cir. 2018) ("Physical discomfort in the use of property, like insecurity and unsafety in the use of property, raises the specter of loss of use.")  A case interpreting Florida law, when the law to be applied is West Virginia law, has no direct bearing on the Court's analysis.  Furthermore, the Court in Mid-Continent Cas. Co. considered the severity of the physical discomfort, specifically if there was insecurity and unsafety in the use of property.  The Court does not find the flooding in Mid-Continent Cas. Co. analogous to the noise the Goldsteins are experiencing. Therefore, because the

8

noise nuisance is merely a "burden" and does not amount to "property damage", the underlying lawsuits do not trigger coverage under Coverage A of the Policy.

### 3. Occurrence

While the underlying lawsuits do not allege "bodily injury" or "property damage" the Court will nevertheless briefly review the parties' arguments regarding an "occurrence" and "damages." An occurrence is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 46-3 at 33. "The common and every day meaning of 'accident' is a chance event or event arising from unknown causes." Amer. Modern Home Ins. Co. v. Corra, 222 W. Va. 797, 801 (2008). An accident has also been defined as, "an unusual, unexpected and unforeseen event. . . . An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. . . .To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual." Erie Ins. Prop. & Cas. Co., Inc. v. Viewpoint, Inc., 2013 WL 828327, at *5 (N.D.W. Va. 2013) (quoting Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group, 37 Wash.App. 621, 681 (1984)). Furthermore, West Virginia courts have stated, if it "was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue." State ex rel. Nationwide Mut. Ins. Co. v. Wilson, 778 S.E.2d 677, 683 (W. Va. 2015).

Peacemaker argues that they were without notice of the grievances regarding the noise nuisance. However, Peacemaker knew that noise from operating the shooting

range and the operating hours were a concern for the community. Peacemaker made representations to the Planning Commission about the noise level, specifically the decibels and the hours of operation when seeking approval. Peacemaker at the very least, should have known it was exceeding the decibel level. Additionally, Peacemaker knew it was operating earlier and later than it represented it would operate when concerns were raised. The Court finds that the damages alleged in this case are not caused by an accident, and therefore, not caused by an "occurrence."

### 4. Damages

Lastly, while what is considered damages under the policy is not expressly defined in the Policy itself, courts interpreting West Virginia law have found the duty to defend and the duty to indemnify do not arise when the relief sought is injunctive relief. See One Gateway Assocs, 184 F. Supp. 2d at 533. In the underlying lawsuits, the Goldsteins seek equitable relief, specifically temporary and permanent injunctive relief regarding the hours of operation and maximum noise levels. If the Circuit Court of Berkeley County, West Virginia or the Circuit Court of Frederick County, Virginia order for Peacemaker to comply with an injunction and Peacemaker fails to comply with such injunction, only then do the Goldsteins wish to seek further relief. Therefore, in the underlying lawsuits, the Goldsteins do not currently seek damages against Peacemaker.

### B. Coverage B of the Policy

While Peacemaker makes no argument regarding Coverage B of the Policy, the Court will review Coverage B of the Policy for potential coverage. Coverage B of the Policy provides that if a claim is made against an insured for damages because of "'personal or advertising injury' to which this insurance applies" then Liberty will pay up to

its limit in liability, including providing a defense to the insured. ECF No. 46-3 at 20. The Court must determine if the underlying lawsuits allege a "personal or advertising injury." The Policies define "personal or advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses . . . "[t]he wrongful eviction from, wrongful entry into, or invasion or the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."[8] ECF No. 46-3 at 33. This provision of the Policy is "clear and unambiguous" and the Court will give full effect to the "plain meaning intended." Keffer, 153 W. Va. at 815-16. It is clear from the Policy definition that Peacemaker must be the "owner, landlord, or lessor" of the Goldsteins' property for coverage to apply under this provision. Therefore, coverage for "personal or advertising injury" is not triggered under Coverage B of the Policy.[9]

### C. Defendants' Counterclaims

As stated above, coverage is not triggered in the underlying lawsuits under Coverage A or Coverage B of the Policy. Therefore, Peacemaker's counterclaims alleging bad faith, breach of contract, and unfair trade practices may be decided on summary judgment because there is no "genuine issue of any material fact" for a jury to decide. Celotex, 477 U.S. at 322. First, the common law bad faith claim fails because Liberty acted reasonably in seeking declaratory relief to determine if coverage applied under the Policy. Liberty made a timely investigation of the complaints in the underlying

---

8 The Court will only discuss this portion of the definition of "personal and advertising injury" because it is clear from a glance at the other offenses that Coverage B of the policy does not apply.

9 The Court will not address whether or not Peacemaker provided timely notice because there is not coverage for the underlying lawsuits under Coverage A or B of the Policy.

11

lawsuits and then made the determination that coverage did not apply. The Court has made the same determination. Therefore, Liberty did not engage in bad faith in determining to deny Peacemaker's claim.

Second, Liberty cannot be liable for a breach of contract claim because there is no coverage for the underlying lawsuits under the Policy. Liberty has not breached the Policy by denying or failing to pay coverage where coverage is not due. For a contract to be breached, a party to the contract must not perform its required duties. Here, Liberty was not required to defend or indemnify Peacemaker, and therefore, has not breached the Policy.

For similar reasons, Peacemaker's unfair claim settlement practices claim fails. Peacemaker has failed to provide facts that could support this claim other than Liberty's failure to provide coverage. From the facts before the Court, Liberty has not made any misrepresentations regarding coverage, Liberty has acted reasonably promptly and investigated the claims and only after this investigation did Liberty deny coverage. Furthermore, Liberty responded to the request and conducted the investigation the same month the claim was received. ECF Nos. 46-10, 46-11. There are no facts before the Court to support a claim that Liberty has engaged in an unfair claim settlement practice under W. Va. Code § 33-11-4 (9). Peacemaker's counterclaims alleging bad faith, breach of contract and unfair claim settlement practices fail as a matter of law.

## V. Conclusion

For the reasons stated above, the Court hereby **ORDERS** that the Plaintiff's Motion for Summary Judgment, [ECF No. 46], is **GRANTED**. In so far as this concludes the litigation in this matter, the remainder of the pending motions are **TERMINATED AS**

**MOOT**.

This case is **ORDERED** stricken from the Court's active docket. The Clerk is **DIRECTED** to enter judgment in favor of the Plaintiff. The Clerk is further **ORDERED** to transmit copies of this Order to all counsel of record herein.

**DATED:** October 24, 2018

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE